# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# WESTERN DIVISION

| | |
|---|---|
| KIMBERLY LU WOLF, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> COMMISSIONER OF ) <br> SOCIAL SECURITY, ) <br> ) <br> Defendant. ) | Case No. 3:20-cv-50055 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Kimberly Lu Wolf has filed suit against the Commissioner of Social Security challenging the Social Security Administration's denial of her application for Social Security disability benefits or Supplemental Security Income benefits. Wolf has filed a timely objection to the magistrate judge's denial of her application to proceed *in forma pauperis* (IFP). The Court reviews the magistrate judge's ruling to determine if it is clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a).

In her initial IFP application, filed on February 7, 2020, Wolf stated that she is employed at a preschool but makes only $152 per month. Her primary source of income is disability benefits, which total $15,624 per year ($1,302 per month). She also said that over the previous twelve months, she had received food stamps in a total amount of $204 and energy assistance benefits totaling $550 ($17 per month and $46 per month, respectively). Wolf also stated that she owns a fifteen-year-old car that she said is worth $1,800.

At the end of the form, Wolf added in the following:

I am on public assistance and can barely pay my monthly bills.  I have no money to pay filing fee.

Expenses:   Rent:            550/mo
            Utilities:       180/mo
            Food:            150/mo
            Car Ins:          65/mo
            Gasoline:        100/mo
            Life ins:         30/mo
            Cable/internet:   75/mo
            Credit cards:     70/mo

The total of these amounts is $1,220 per month.  The Court observes, however, that it is quite unlikely that this represents the full picture of Wolf's financial distress:  the fact that she is making credit card payment of $70 per month suggests that she has an outstanding debt to the financial institution that issued her credit card.  And a reasonable observer would understand that Wolf has expenses besides the eight categories she listed:  what about clothing?  doing the laundry?  car repairs?  buying toothpaste and other personal hygiene items?  But the District's IFP form, which Wolf used, does not require or ask the party to identify debts owed or, for that matter, expenses.  Rather, Wolf added the list of expenses in handwriting at the end of the form.  A reasonable observer would understand the form to reflect not just that Wolf had outstanding debts (thus the monthly credit card payments) but also that she was listing her main categories of expenses, not every dime that she has to spend each month.

That aside, the key feature of Wolf's *in forma pauperis* application is the fact that she is on public assistance and thus, almost by definition, is barely getting by. Nonetheless, the magistrate judge denied Wolf's IFP motion on the day it was filed,

2

stating that "her application reveals access to assets sufficient to pay the filing fee, specifically, income, benefits she already receives, plus equity in her vehicle." Dkt. 6.

Five days later, on February 12, Wolf submitted an amended IFP application. On this form, Wolf listed the same information as before regarding her income and assets (i.e., the 15-year-old automobile), but she provided, again in an attachment that she added to the form, slightly different—and higher—figures regarding her monthly expenses. In a page that she attached to the form, Wolf said this:

> My monthly expenses are currently $1,320.00 but starting next month I will have to pay $144.00 per month for Medicaid which will bring my total monthly expenses to $1,464.00.
>
> | Rent: | 550.00 |
> | Utilities: | 180.00 |
> | Cable/Internet: | 75.00 |
> | Food: | 150.00 |
> | Car insurance: | 65.00 |
> | Gasoline: | 150.00 |
> | Life insurance: | 30.00 |
> | Loans and Credit Cards: | 120.00 |
> | Medicaid: | 144.00 |

The differences from the earlier list of expenses were the $144 monthly expense for Medicaid, which Wolf described as a new expense; higher monthly payments for loans and credit cards—not terribly surprising given her precarious financial state; and a higher monthly expense for gasoline. As before, a reasonable observer would understand that Wolf likely had other regular and necessary expenses beyond the primary categories she listed.

Wolf also included the following plea at the bottom of her revised IFP form:

> After I pay my bills each month there is little to nothing left over. I have no savings or other assets. My car, the only thing of value I own, has 170,000 miles on it and currently needs a head gasket repair at $700.00

3

and an exhaust repair at $300.00, rendering it virtually worthless. I am barely able to meet my monthly bills and cannot afford to pay $400.00 for the court filing fee.

I apologize if my previous application did not accurately show my monthly income and expenses. I have tried to be as detailed as possible. I implore the court to reconsider my previous application and grant my request for a waiver of the filing fee.

Respectfully,

Kimberly Wolf

Dkt. No. 9 at 5.

The same day that the magistrate judge received Wolf's revised motion, he entered the following order:

> After this Court denied her original application, the plaintiff submitted a revised application to proceed in forma pauperis [9]. In an attachment, she explains that she will soon start paying $144 a month for Medicaid, and so by the Court's calculation her monthly income will exceed her expenses by only about $105 a month (taking into account the one-time HEAP payment she received toward her utility costs), as opposed to the approximately $349 monthly excess identified in her original application. However, to reach that result the plaintiff also changed some of the expenses she identified in her original application without noting the changes in her revised application. For instance, she changed her gasoline expenses from $100 to $150 a month, and changed her $70 monthly credit card expenses to $120 monthly loan and credit card expenses, all without explanation. Even under her revised application, she still has access to funds sufficient to pay the filing fee. Her revised application and request for reconsideration [9] is denied, and her filing fee remains due 2/26/2020.

Dkt. no. 10.

The tenor of the magistrate judge's February 12 order suggests he may have disbelieved Wolf's revised application, at least the part of it that identified greater monthly expenses. But because the order does not expressly find the revisions to be false—and because one can safely assume that the magistrate judge would not have found Wolf to have filed a false statement without first giving her a fair chance to be

4

heard—the Court will take the order at face value. In other words, the magistrate judge concluded that Wolf's monthly income exceeded her expenses by $105 per month, and for this reason "she still has access to funds sufficient to pay the filing fee."

As indicated, Wolf has objected to the magistrate judge's order.

## Discussion

One need not be entirely destitute to obtain the benefit of proceeding *in forma pauperis*. *Atkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948). An affidavit seeking to proceed *in forma pauperis* is sufficient if is reflects that the party cannot, due to her poverty, afford to pay for the costs of litigation and still provide for herself and any dependents. *Id.*

The filing fee is $400, so the question is whether Wolf could pay that. The magistrate judge concluded that she could—meaning that he determined that she had access to $400. The magistrate judge did not, for example, direct or propose that Wolf pay the fee in installments. Thus the decision this Court is reviewing is the magistrate judge's determination Wolf had $400 available to pay the filing fee.

The Court concludes that the magistrate judge's finding is clearly erroneous. The judge did not offer any viable explanation of the source from which Wolf was supposed to obtain the $400 needed to pay the filing fee. If it was her vehicle—as the magistrate judge's February 7 order suggested—that does not hold water. The vehicle is 15 years old and has a declared value of $1,800. Besides the fact that there is a good chance that this is an overstatement of a 15-year-old car's actual value, one can't post a car to pay a filing fee; it would have to be converted to cash. The proposition that a lender would actually loan money to Wolf—who is on public assistance—on a 15-year-old car

5

is dubious, to say the least: would an average lender truly expect that Wolf is capable of paying back a loan, with interest? And even if there were a lender with such lax standards, if Wolf took out such a loan, it would add on a monthly payment that would increase her obligations and thus actually weaken her financial status from a cash flow standpoint. For these reasons, to the extent the magistrate judge relied, or continued to rely, on Wolf's car in denying IFP status, the determination was clearly erroneous.

That aside, the proposition that Wolf had funds available to pay $400 at the time she filed the lawsuit is not supported by the record and is simply not viable based on the information before the Court. Wolf has sworn that she has "no savings or other assets." The magistrate judge did not find this to be false, and even if he had, the record would not provide any support for such a finding. On the question of monthly cash flow, Wolf has also sworn that "[a]fter I pay my bills each month there is little to nothing left over." Dkt. no. 9 at 5. Her statements in the IFP application support this, as the current petition indicates that she has an excess of $60 per month over expenses, and $60 is nowhere near $400.

More generally, the proposition that an individual whose sole income consists of public assistance (save for $152 per month from part time employment, which is fairly characterized as a pittance) is financially able to pay a $400 filing fee is not reasonably sustainable. *See, e.g., Potnick v. E. State Hosp.*, 701 F.3d 243, 244 (2d Cir. 1983) (per curiam); *Buckhanon v. Astrue*, No. 08-cv-221, 2008 WL 706696, at *1 (E.D. Wis. Mar. 14, 2008); *Johnson v. City of Port Arthur*, 892 F. Supp. 835, 839 (E.D. Tex. 1995). The Court concludes that the magistrate judge's order clearly erred in finding that Wolf was able to pay the filing fee. In doing so, the order imposed an unreasonable barrier

preventing an indigent person on public assistance from access to our nation's court system. *See, e.g., Nietzke v. Williams*, 490 U.S. 319, 324 (1989) ("The federal *in forma pauperis* statute . . . is designed to ensure that indigent litigants have meaningful access to the federal courts."). The order is reversed, and the Court hereby grants Wolf's *in forma pauperis* application.

### Conclusion

For the reasons stated above, the Court sustain Wolf's objections to the magistrate judge's orders denying her *in forma pauperis* application and sets aside those orders. The application—actually, both applications, as each was sufficient—are hereby granted [dkt. nos. 3, 9]. The Clerk is directed to issue summons, and the U.S. Marshal is appointed to serve the defendant with summons and the complaint. If Wolf wants the Marshal to serve summons, she must complete and return the form that the Clerk will send her for this purpose. Wolf's attorney may wish to consider, however, handling service himself, as service upon a government agency is easily accomplished by counsel via the mail, without significant expense, much more quickly and efficiently than by leaving it to the Marshal. *See* Fed. R. Civ. P. 4(i)(1) & (2).

Date: April 6, 2020

                                                         MATTHEW F. KENNELLY
                                                         United States District Judge